Good morning. May it please the court, I'm Amy Gilbrow. I represent the plaintiff in this case, Terry Henderson. In poring over the brief in this case, trying to determine what the court's interest might be, I hope that it wasn't to scold me for the typographical errors in the opening brief. I have no disrespect to the court. I'm sincerely sorry for that. I'll tell you what my issue is. The thing that's pivotal to me in this case is the issue of whether or not the ALJ failed to adequately address the opinion of the physical therapist, Turner, and Dr. Anderson. That's the crucial question for me. Okay. Well, I think in regard to the physical therapist, the therapist, Mr. Turner, whether the ALJ, the question is whether the ALJ properly addressed his opinion, and I think the answer must be no. Well, it's complicated a little bit by the fact that he's not a recognized medical source. Okay. Well, in 2006, Social Security promulgated Social Security Ruling 06-3P, which we cited in our briefs. And that rule states that although the commissioner differentiates between acceptable medical sources and other medical sources, nevertheless, other medical sources are important pieces of evidence, particularly given the framework of medical care in our country at this time. So what does that mean, important pieces of evidence? Does that mean then that the ALJ must specifically refer to and give reasons for not discussing? Yes. Okay. What case says that for a source that's not an acceptable medical source, that the ALJ has to specifically discuss that opinion rather than just doing it generally in the context of resolving the claim? Okay. First of all, just turning back to Social Security Ruling 06-3P, I'm going to talk to you about cases, but I want to point out that it specifically indicates opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and could be evaluated on key issues such as impairment, severity, and functional effects. They should be. And also indicates that the adjudicator generally must explain in the decision the weight given to opinions from such sources. There are a lot of weasel words in there. There are. Generally should be. There are. So then that's why I'm asking you for a case that interprets that to mean that the ALJ must specifically discuss and resolve any opinions. I mean, if the ALJ generally, as it says in the advisory guidance, if the ALJ generally talks about the issue, then does the fact that the ALJ didn't call the therapist by name make a difference in terms of this efficiency of the evidence? Okay. Well, most recently Bruce Fiasco last year found that an ALJ must consider lay witness testimony and that such testimony is competent evidence, which cannot be disregarded without comment. I see a difference between lay witness evidence, which is, you know, friends and family saying here's what I observed him do, and the opinion, lay opinion of the therapist. So I'm not sure that that helps you in terms of the lay witness testimony as you're trying to relate it to a lay opinion.  I don't have a published case which discusses the opinions of a non-acceptable medical source and other medical source and finds that the ALJ must specifically address the limitations given. However, 063P, which is the commissioner's statement on this issue, discusses both lay witness and other medical sources. So the commissioner doesn't make a distinction between those two types of sources and what the ALJ must address. I'm just looking at this in terms of our standard of review, and that's why I have some reticence about this, because I'm not sure that under the substantial evidence standard of review we can have that requirement if it's not explicitly set out. I think that looking at the cases that address lay witness testimony, meaning friends and family more than therapists perhaps, all of the cases that create that law arise out of the same part of the regulations, and those regulations don't distinguish between friends and family and other medical sources. Well, the difference is the friends and family, they're talking about the symptoms, and the non-accepted medical source is talking about the diagnosis that's going to form the basis for the disability. And actually, I want to be real careful to explain that I'm not asking this court to find the ALJ errant and not discussing diagnosis. A non-acceptable medical source cannot be the medical source that offers a diagnosis in a case. What I'm saying is that based on 06-3P and the commissioner's position on lay witness testimony, opinions of non-acceptable medical sources are important as to the symptoms and limitations that an individual has. And the reason for that is that ‑‑ Don't do that to me. Sorry. Oh, I'm sorry. I'm sorry. I was. Go ahead, since you didn't want to hear it. I'm so sorry. The reason for that is that Mr. Turner saw Mr. Henderson at least 11 times based on what he said in the treatment plan. So he's seen Mr. Henderson more frequently than any other source in this record, and that's why the commissioner chooses to give therapists and physician's assistants more weight, because they tend to be on the phone a lot. And what is it exactly that Mr. Turner said or wrote that would affect this case? Because I read a fair amount of what Turner wrote, and even if it's error not to have discussed it, I'm not yet convinced that it isn't harmless error. So what is it in the Turner statements, I'll refrain from the word diagnosis, that makes this not only error but harmful error? At page 361 of the transcript. I'm sorry. I've got stuff here in front of me. So where is it in the ER? 361. 361. Yeah. That is a page of a psychological evaluation form that Mr. Turner completed for DSHS, and there he rated Mr. Henderson's limitations in cognitive and social factors, most importantly finding that Mr. Henderson had marked limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and also that he had marked limitations in his ability to relate appropriately to coworkers and supervisors. Yeah. You know, I read that form, and on the same form I'm on page, what is it, 362, described treatment to date, he's maintained stability through a difficult period, and is now looking for work. Yes. And he has these difficulties, marked difficulties, and there are several of them, including what you just read. But this doesn't strike me as a very definitive statement that this man can't work. He's got troubles, no question about it. I mean, he's being medicated. Mr. Turner says that he's actually being fairly conscientious in following his therapy at this time. When the limitations were offered to the vocational expert at the hearing, at page 114 of the transcript, the vocational expert said that such an individual would have difficulty sustaining employment. So the specific limitations given by Mr. Turner were offered to the vocational expert, and he opined that such an individual would be unable to work. As I read this case, actually, Mr. Henderson has a number of difficulties, which I'm quite sure would make it difficult for him to continue employment. His past history has been he's had trouble maintaining employment. And he actually tried to work at least twice after the alleged onset date and was unsuccessful, and the administrative law judge found that that work activity was not substantial gainful activity. So while he's continued to try to work, he hasn't been successful in maintaining the jobs, just as the vocational expert predicted. Okay. I know we wanted to talk about Dr. Anderson's report. I would like to reserve some time for rebuttal, but I will. Why don't you mention Dr. Anderson briefly, and we'll make sure you get a chance to respond after we've heard from the government. Okay. My point in regard to Dr. Anderson's report was that she offered some limitations at page 416 of the excerpts of record. In particular, she said she couldn't picture Mr. Henderson maintaining employment as he presented today. The judge addressed Dr. Anderson's opinion in his decision. Now, the ALJ is required to give specific and legitimate reasons for rejecting an examining psychologist's opinion. In this case, he said, I'm giving some but not great weight to Dr. Anderson's opinion because it's inconsistent with the longitudinal history. But my position is that that statement is not a specific and legitimate reason for rejecting her opinion. What does good but not great weight mean? Is that a specific and legitimate statement? What is Mr. Henderson's longitudinal history? Nowhere in his decision does the ALJ actually explain what he means by that statement. So what we're asking the court to find is that the judge did not give specific and legitimate reasons for rejecting her report. Okay. Why don't we hear from the government, and we will give you a minute to respond. I'm sorry. When you go back to the council table, I think you have the rules of evidence there. Will you look at Rule 701? I want to ask you a question about that. Certainly. I'm sorry. Did you want to ask a question? Good morning, Your Honor. My name is Tom Elsberry. I'm here on behalf of the commissioner. I'll direct my comments straight to Mr. Turner. I would submit initially that the ALJ did not reject Mr. Turner's comments. The ALJ's RFC actually incorporates the limitations addressed in Mr. Turner's report, which is appropriate, I think, to resolve one issue on the lay witness issue. He is an other medical source, so we do review therapists differently than family. They each get weight according to their area of involvement. The therapist here, Mr. Turner. As I understand your argument, it's that he didn't have to specifically delineate the therapist's name and what his observations were so long as the gist of what the therapist said was accounted for in the decision. Exactly. If he's incorporating the limitations that are being objected to, that's what I'm saying. He doesn't need to specifically delineate that he's accepting them. There's such a degree of evidence in these cases, it would be I think technically impossible to specifically mention each and every document. Now, tell us where in the record the ALJ incorporated the limitations that were articulated by Mr. Turner. In his RFC. And specifically, Mr. Turner listed five marked limitations, two of which were relating appropriately or interacting appropriately with the public, co-workers and supervisors. The RFC accounts by that by limiting Mr. Henderson to only occasional face-to-face interaction with the public and occasional interaction with co-workers and supervisors. What page are you on in the ALJ's decision? Don't mind putting my nose in it. The bottom of ER 28. And so is it your position that the RFC incorporated all of the limitations that were articulated by the therapist? Yes, it is. My argument is that by incorporating the, to back up Mr. Turner's opinion, his handwritten comment underneath the checkbox marked limitation says based on clinical assessment, of which there's no evidence in the record at all that he ever assessed him, because there's no treatment notes at all from Mr. Turner. But he says on clinical assessment, claimant or patient's reports, self-reporting regarding social, I believe the exact wording, related to recent activities, which I'm not sure what that means, but it does seem they're talking about his ability to interact with other people, with the public, with co-workers. So when the ALJ accounted for that limitation, my argument is that that also then allowed him to deal with the other limitations, which were ability to learn new tasks, performing routine tasks, and responding appropriately to and tolerating pressures. You know, in the number five in bold here, the basic capacity to do work and so on, it's a bit of a stretch to say that that incorporates Mr. Turner's assessment. It is a bit of a stretch.  It's a bit of a stretch. I believe it could be interpreted that way. And it's not unreasonable. I believe it. What if I were to conclude that the ALJ erred in not referencing Mr. Turner specifically and discussing it and dealing with it? Then what? Okay. Then I would argue that it was harmless error under Stout, because pursuant to Stout, when this court can confidently conclude when this testimony is credited as true, no reasonable ALJ would reach a different finding. I think this is a picture-perfect example of that. He has another source. He's entitled to some weight. But even when credited as true, the ALJ still has to weigh it in context with the entire record. And we have acceptable medical sources treating and examining physicians who have differing opinions than Mr. Turner. So when the ALJ on remand weighs all the evidence, he has to look at crediting as true as he does the treating physician and then the credited as true therapist, other source. The treating physician is going to outweigh them. So on remand, I think it's clear that the ALJ would find the same, reach the same result. I think this is also fortified. The ALJ didn't cite these reasons, and it wouldn't be very helpful if he had. But typical reasons for not accepting this kind of testimony is when there's no underlying objective evidence, no clinical examination. Let's put it this way. If the only evidence we had in front of us was Mr. Turner's evaluation, so we're not discounting it based on inconsistent evidence or inconsistent testimony or so on, if that were the only evidence in front of us, would the ALJ be required to award benefits? No. Because? Based on these statements, which I believe he referenced when speaking with Ms. Gilbrow, he notes that the meds are helping to maintain mood and energy level to improve ability to work. That's on ER 361. And on 362, as you noted, he's maintaining his medical conditions. I think it's, I'm not sure, but he's maintaining his appointments, and he's looking for employment. He specifically notes that he's improving, and with his meds and with his therapy. Well, he mentions meds, not the therapy. Dr. Anderson mentions that with therapy, his symptoms would probably evade. But so looking at that, even his credit is true. Mr. Turner himself is not saying he can't work. Okay. What about Dr. Anderson? Dr. Anderson is the same. She also says that... Well, it's a little problematic that the ALJ discounted her opinion as being inconsistent with the longitudinal history of the claimant. What does that mean? Not the most artful statement, I'll admit. But he does become more specific at one point in the record, and I would direct you to ER 30. At the bottom of the page, he talks about the fact that the record shows Mr. Hendon's condition improved significantly with treatment and medication. And then he cites several different places in the record, including Dr. Rogers, and I believe, and citing his report to Dr. Anderson, which I believe is at 17 after. So this is what you think he's saying about the longitudinal history, is that all of these other doctors showed improvement? I think he's referring to his previous paragraphs or pages, because where he makes that comment is at the top of page ER 32, when he's concluding his discussion of all the evidence and the other medical source opinions. I would also say that he, granted, not a very artful statement, but he's just not giving her great weight. I believe he incorporates most of her opinion as well. Her opinion also is not very specific and talks about some limitations, and he might have these. And then she even states, as he currently presents, which indicates a snapshot in time. And her opinion is based on a mental status examination alone, and then his self-reporting, which the LJ found not fully credible and which is not so much. I'm just embarrassed to ask this question. We've been kind of circling around it. Is longitudinal functioning a term of art? Did the ALJ make it up? I mean, where's that come from? What's it mean? I've seen it enough in decisions to believe that the ALJ has believed it's a term of art. I believe it also comes... And it means X? I think it means the entire record. Looking at his medical history from the beginning to the end and consistently throughout. So while she said, and he specifically notes that she said, at this point in time or cannot presently do employment, he's talking about Mr. Henderson's capabilities and limitations from the alleged onset date all the way through. And as I recollect, Dr. Anderson is merely an examining physician, having seen him once. Just saw him one time. How much of his record did she have in front of her at the time she saw him? Do we know? I want to check because there was one doctor, I don't know if it was her, who requested medical information and was not given that. I believe it is silent. She doesn't say that she has any other evidence or records she's relying on. And my reading of this report, or my recollection of my reading, was that it's all based on his subjective reporting to her and then her mental status examination, which was very brief. Simply reading her letter, there's no indication that she had anything other than what was coming to her in that conversation. Because she says, I spoke with him for roughly an hour and a half in order to obtain the following information, and then we get the body of the letter. But I'm wondering if there's something else in the record that tells us that she might have had a file or something. Your answer is you don't know. I think there's nothing else in the record. I've seen nothing, and I think I would have. So in short, I think, also longitudinal, to go back to that for one second, I believe there is one of our regulations, and I can't say it off the top of my head, we do use that term to talk about, and perhaps in the right, it might be 404-15-13. And it talks about how we review the record, and I believe longitudinal means as I was explaining through the entire period. And so in that regard, I believe he is specifically saying. Okay, you're over time. Do you want to sum up? I can sum up by saying I believe, now that Mr. Turner's testimony and Dr. Anderson's testimony establish that Mr. Anderson is unable to perform work. Okay, thank you. Thank you. Response? Did you have a question about the Rules of Elevation? Oh, I just wanted you to comment on Rule 701, and particularly if Mr. Turner or the therapist fits within 701C, whether his testimony was admissible, considering the C section. Okay, well, as a preliminary matter, the Federal Rules of Evidence don't apply in Social Security proceedings, but the general rules behind the Federal Rules of Evidence are obviously relevant, and a judge will consider them in determining what evidence he will consider. And in this case, this Rule 701 seems to follow kind of the rationale behind 063P, which is that a non-acceptable medical source cannot offer an opinion that an individual has a particular diagnosis, but can offer an opinion regarding the individual's symptoms and limitations. And that's what Mr. Turner did at the report that I'm citing in the record, and also he did in his treatment plan and review notes. Thank you. I disagree that Mr. Turner's opinion is credited as true. If Mr. Turner's opinion were the only evidence of record, of course the ELJ is not required to treat any particular opinion as the opinion of record. The ELJ looks at all the decisions. But if this were credited as true, certainly the ELJ would find disability in this case because of the limitations that Mr. Turner assessed and the vocational expert testimony in the case. Okay. I have to say I'm not convinced of that. Because while we have some boxes that are marked, I don't mean that as a pun, the boxes that are marked say marked, disabled, da-da-da. Now, there's another box further to the right that says severe. So in no case did Mr. Turner mark a box that said severe. And in no case in the short little textual narratives do we have any statement from Mr. Turner that says, this man simply can't work to the degree that I can refer from the textual material in Mr. Turner's report. It is that he's not actually doing too badly and that he's looking for work. Well, I disagree, and this relates to a rebuttal that I wanted to make to Mr. Ellsbury's arguments that essentially the idea that Mr. Henderson is doing well kind of throughout this period. I didn't mean to say well. I hope I said not too bad. Okay. Even not too badly I think is a little bit of a stretch. Dr. Rogers, he was the treating psychiatrist at the VA. At page 480 of the transcript does indicate that Mr. Henderson is doing better. Everyone kind of consistently reports that he's responding to medication, but he assessed a GAF at that time of 45, which indicates that Mr. Henderson was still having marked impairment in cognitive or social functioning according to his treating psychiatrist. And then in regard to Dr. Anderson's report, although Mr. Henderson consistently reports that he's feeling better on Welbutrin, first of all recall that that report was only six weeks after a 10-day psychiatric hospitalization for suicidal ideation. Doing better is a relative term. That was relative. Dr. Anderson actually thought that the medication that he was on was making him worse, possibly. And then also the ALJ, in noting that he does well, doesn't cite any evidence after 2005. In a treatment review and update signed by Mr. Turner, completed by him in April of 2006, kind of the most recent picture we have of Mr. Henderson's function, he indicates that he's struggling with persistent anxiety and mood swings. He does indicate that he's found psych meds helpful, but indicates that he was applying for work until he realized he's not yet ready to return to work. He's indicating that he's still experiencing mood swings, anxiety, intrusive thoughts, anger and irritability, poor sleep, agitation and paranoia. We've taken you well over time. Would you like to sum up? I'm so sorry. No, it's not your fault. Would you like to sum up? I would. I disagree that Mr. Henderson is doing well, as found by the administrative law judge. I would ask this Court to extend the holdings in stout to non-acceptable medical source opinions in addition to lay witness testimony that's consistent with the Commissioner's ruling in SSR 06-3P. The ALJ is required to give reasons for rejecting this opinion and did not do so in this decision. Thank you very much. Okay, thank you. Nice arguments on both sides. The case of Henderson v. Astor is now submitted for decision.
judges: Alarcon, Fletcher W. , Rawlinson